# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Home Solution Pros, LLC,**
**Petitioner Below, Petitioner**

**vs)  No. 15-0391** (Kanawha County 14-AA-2)

**Russell Fry, Acting Executive Director,**
**Workforce West Virginia, Unemployment Compensation Division,**
**Respondent Below, Respondent**

**FILED**

**April 8, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Home Solutions Pros, LLC, by counsel William B. Summers, appeals the Final Order of the Circuit Court of Kanawha County, entered on March 30, 2015, that affirmed the determination that petitioner was a "successor employer" as defined by West Virginia Code § 21A-1A-26, and was also in violation of the State Unemployment Tax Act  ("SUTA") Dumping Provision, found in West Virginia Code § 21A-5-10c. Respondent Russell Fry, Acting Executive Director, Workforce West Virginia, Unemployment Compensation Division, by counsel Mary Blaine McLaughlin, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual Background

Home Solutions, LLC ("Home Solutions") was a residential home building company, which began operations on April 1, 2004, for the purpose of constructing residential homes. Home Solutions changed its name to Quality Home Solutions, LLC ("Quality Homes Solutions") on January 30, 2008. Ann E. Skiles and Anthony S. Easter were members of Home Solutions, and later renamed Quality Home Solutions. Ann E. Skiles was the managing member of both companies. The companies' addresses were the home addresses of Ann E. Skiles.

On January 1, 2010, Quality Home Solutions was given notice that its contribution rate was 7.5 percent because the company's reserve balance was a debit balance equaling ten percent or more of its annual taxable payroll. A surtax of one percent applied to all employers with a debit new reserve balance, resulting in a reporting rate of 8.5 percent. Therefore, Quality Home Solutions' contribution rate for the year 2010 was 8.5 percent. The employees of Quality Home

1

Solutions for the fourth quarter of 2009 were L. Banfield, M. Bennett, K. Bunnell, J. Cantwell, D. Becker, L. Kreaps, and P. Mitchell.

Quality Home Solutions was terminated by the West Virginia Secretary of State's Office on February 9, 2010. Petitioner Home Solutions Pros, LLC's ("petitioner") effective date of business was January 21, 2010, with a business legal purpose as construction of residential buildings. Petitioner had zero employees, and therefore, no wages for the first quarter of 2010. Petitioner's employees for the second quarter of 2010 were L. Banfield, M. Bennett, J. Cantwell, and P. Mitchell -- four of the five employees that worked for Quality Home Solutions in the last quarter of 2009. In the third quarter of 2010, petitioner added one employee, J. Sabo. In the last quarter of 2010, petitioner's employees were the same as the third quarter, except for the deletion of J. Cantwell.

Petitioner's members are Ann E. Skiles, Anthony Easter, and William Skiles, with Ann E. Skiles serving as managing member. Also, petitioner's primary business address is Ann E. Skiles's home address, one of the same addresses that served as the address for Quality Home Solutions. On April 28, 2012, respondent notified the petitioner that it had determined that petitioner had acquired the entire organization, trade, or business, or substantially all of the assets of Quality Home Solutions as of January 1, 2010, per common ownership. Respondent concluded that petitioner had, therefore, acquired a tax liability of $1,884.14 plus interest, and had acquired a contribution rate of 8.5 percent for the years of 2010, 2011, and 2012. Petitioner requested reconsideration of respondent's successorship determination and the amounts owed by petitioner. In March 2013 respondent found petitioner liable for SUTA "dumping," as described in West Virginia Code § 21A-5-10c.

The matter proceeded to an evidentiary hearing on May 24, 2013, before an administrative law judge ("ALJ"). The ALJ found that petitioner and Quality Home Solutions have the same managing member, the same address, and the same members. Additionally, the ALJ found that petitioner's employees for its first quarter of operation all came from Quality Home Solutions. Consequently, the ALJ concluded that respondent met its burden of proving that petitioner was a successor to Quality Home Solutions and liable for SUTA dumping according to the applicable statutes.[1] Respondent adopted the ALJ's recommended decision.

Petitioner appealed respondent's decision to the circuit court. By order entered March 30, 2015, the circuit court affirmed respondent's decision in all respects. This appeal followed.

## Discussion

On appeal, petitioner argues that the circuit court erred by failing to reverse respondent's determination that it is a "successor employer" of Quality Home Solutions and that it is liable for

---

[1]In 2004, Congress passed the State Unemployment Tax Act Dumping Prevention Act, 42 U.S.C. § 503(k), mandating that states amend their unemployment compensation laws to prevent the practice of an employer shifting employees from an entity with a higher tax rate to one with a lower rate to decrease its unemployment tax burden, a practice known as "dumping."

2

SUTA dumping. The standard of review for an administrative appeal is set forth in West Virginia Code § 29A-5-4(g), which provides as follows:

> (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedures; or
> (4) Affected by other error of law; or
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Furthermore, this Court has stated that

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in [West Virginia] Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

An "employer" under the SUTA is defined, in relevant part, as

> (1) [a]ny employing unit which is or becomes a liable employer under any federal unemployment tax act; [or] (2) [a]ny employing unit which has acquired or acquires the organization, trade or business, or substantially all the assets thereof, of an employing unit which at the time of such acquisition was an employer subject to this chapter[.]

W.Va. Code § 21A-1A-15. A "successor employer" means "an employer that acquires, by sale or otherwise, the entire organization, trade or business, or substantially all the assets thereof of another employer." W.Va. Code § 21A-1A-26.

West Virginia Code § 21A-5-10b, governs the transfer of business and provides, in relevant part, that

> [i]f a subject employer transfers his or her entire organization, trade or business, or substantially all the assets thereof, to another employer, the commissioner shall combine the contribution records and the benefit experience records of the

3

transferring and acquiring employers. The acquiring employer's contribution rate for the remainder of the calendar year shall not be affected by the transfer but such rate shall apply to the whole of his or her business, including the portion acquired by the transfer, through the following thirty-first day of December. If a subject employer makes such transfer to an employing unit which is not an employer on the date of the transfer, such subject employer's rate continues as the rate of the acquiring employing unit until the next effective rate date.

The SUTA Dumping Provision is set forth in West Virginia Code § 21A-5-10c, and provides, in relevant part, as follows:

Notwithstanding any other provision of law to the contrary, the following shall apply regarding assignment of rates and transfers of experience:

(a)(1) If an employer transfers its trade or business, or a portion thereof, to another employer and, at the time of the transfer, there is substantially common ownership, management or control of the two employers, then the unemployment experience attributable to the transferred trade or business shall be transferred to the employer to whom such business is so transferred. The rates of both employers shall be recalculated and made effective immediately upon the date of the transfer of trade or business. The transfer of some or all of an employer's workforce to another employer shall be considered a transfer of trade or business when, as a result of such transfer, the transferring employer no longer performs the trade or business with respect to the transferred workforce, and such trade or business is performed by the employer to whom the workforce is transferred.

(2) If, following a transfer of experience under paragraph (1) of this section, the commissioner determines that a substantial purpose of the transfer of trade or business was to obtain a reduced liability for contributions, then the experience rating accounts of the employers involved shall be combined into a single account and a single rate assigned to such account.

(b) . . . In determining whether the business was acquired solely or primarily for the purpose of obtaining a lower rate of contributions, the Commissioner or his or her representative shall use objective factors which may include the cost of acquiring the business, whether the person continued the business enterprise of the acquired business, how long such business enterprise was continued, or whether a substantial number of new employees were hired for performance of duties unrelated to the business activity conducted prior to acquisition.

(c)(1) If a person knowingly violates or attempts to violate subsection (a) or (b) of this section or any other provision of this chapter related to determining the assignment of a contribution rate, or if a person knowingly advises another person in a way that results in a violation of such provision, the person shall be subject to the following penalties:

4

(A) If the person is an employer, then such employer shall be assigned the highest rate assignable under this chapter for the rate year during which such violation or attempted violation occurred and the three rate years immediately following this rate year.

. . . .

(2) For purposes of this section, the term "knowingly" means having actual knowledge of or acting with deliberate ignorance or reckless disregard for the prohibition involved.

(3) For purposes of this section, the term "violates or attempts to violate" includes, but is not limited to, intent to evade, misrepresentation or willful nondisclosure.

. . . .

(e) For purposes of this section:

. . . .

(2) "Trade or business" shall include the employer's workforce.

Both parties state that Ann and William Skiles, as owners of Quality Home Solutions, LLC, filed for bankruptcy and requested termination of Quality Home Solutions by the Secretary of State's Office prior to February of 2010. Petitioner contends that, while the companies are similar, they are not the same. Petitioner states that Quality Home Solutions built homes from the ground up and was negatively impacted by the housing crisis in 2008, resulting in bankruptcy. Petitioner states that, unlike Quality Home Solutions, it is a renovation company that performs installation work primarily through Lowes Home Improvement Stores. Additionally, petitioner states that it provided testimony that its payroll is approximately $60,000, while Quality Home Solutions was approximately $300,000. In a nutshell, petitioner argues that Quality Home Solutions was dissolved as a result of its owners' bankruptcy; it took some of Quality Home Solutions' former employees and started a new company doing similar, but not the same, type of work; and there was never a sale, acquisition, or transfer of businesses as respondent described because the first company ceased to exist and a new company was started.

Upon our review of the record and the applicable statutes, we find no error in the circuit court's affirmation of respondent's decision.[2] In addition, in *Davis v. Celotex Corp.,* 187 W.Va.

---

[2]We note that respondent initially argues that this Court should hold that petitioner waived its assignment of error because, when it filed its appeal to circuit court, petitioner did not explicitly raise assignments of error as required by the West Virginia Rules of Administrative Appeals. We have reviewed petitioner's administrative appeal to circuit court and believe it raised the issues that petitioner raises in its appeal to this Court. Accordingly, we reject respondent's argument in this regard.

566, 420 S.E.2d 557 (1992), this Court discussed the potential liability of a corporation that purchases the assets or a portion of the assets of a prior existing corporation. In syllabus point two of that case, we concluded that "[a]t common law, the purchaser of all the assets of a corporation was not liable for the debts or liabilities of the corporation purchased. This rule has since been tempered by a number of exceptions and statutory provisions." *Id.* One of the recognized exceptions is "where the successor corporation is a mere continuation or reincarnation of its predecessor." *Id.*, at Syl. Pt. 3, in part.

The facts in this case are not in dispute. There is common management between Quality Home Solutions and petitioner with Ann E. Skiles serving as managing member of both companies, and Anthony Easter being a member of both companies. All of Quality Home Solutions' members became petitioner's members. Petitioner took its initial employees from Quality Home Solutions. Both companies were operated out of the residence of managing member, Ann E. Skiles. Both companies have the same stated business purpose, that is, residential building. Additionally, as respondent states, petitioner's members knew that its 2010 contribution rate was 8.5 percent prior to applying to the West Virginia Secretary of State's Office for dissolution of Quality Home Solutions. Based on the record, we agree with respondent that petitioner was established to avoid the 8.5 percent tax rate in favor of the rate for a new employer, which was 2.7 percent.

Accordingly, the circuit court did not err in concluding that petitioner is a "successor employer" because petitioner "acquire[d], by sale or otherwise, the entire organization, trade or business, or substantially all the assets thereof of another employer[,]" Quality Home Solutions, LLC. *See* W.Va. Code § 21A-1A-26. Additionally, given the common ownership between petitioner and Quality Home Solutions, LLC and the evidence indicating that petitioner's members knowingly established it "solely or primarily for the purpose of obtaining a lower rate of contributions," the court did not err in finding petitioner liable for SUTA dumping, in violation of West Virginia Code § 21A-5-10c.

For the foregoing reasons, we affirm the March 30, 2015, Final Order of the Circuit Court of Kanawha County.

Affirmed.

**ISSUED: April 8, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II